UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 25-cv-22251-BLOOM**

Enlai Zhu,

                             *Plaintiff*,

v.

The Partnerships, Unincorporated Associations Identified
on Schedule A,

                             *Defendants*.

_____/

**PLAINTIFF's *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY
RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION AND
A TEMPORARY ASSET RESTRAINT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff by and through counsel, submits this *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, and a temporary asset restraint.

## Introduction

Plaintiff filed the instant civil action to combat the willful and intentional counterfeiting and infringement of its federally registered trademark 尚官 (referred to as "SHANGGUAN," using its phonetical pronunciation) under U.S. Trademark Registration No. 7,465,986. *See* Unsealed Exhibit 1 to the Complaint, attached hereto as **Exhibit 1**.

The SHANGGUAN mark, consisting of two Chinese characters, is distinctive, signaling to consumers that the products come from authorized retailers. As such, the goodwill associated with the SHANGGUAN mark holds incalculable and immeasurable value. Sales and revenue derived from merchandise sold under the SHANGGUAN mark have grown significantly.

As alleged in Plaintiff's Complaint, Defendants are advertising, promoting, offering for sale, or sold infringing and/or counterfeiting SHANGGUAN products through their e-commerce

1

stores operating under the Seller Aliases identified in Schedule A to the Complaint. *See* Compl. [DE 1], at ¶¶11-12. Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores using one or more Seller Aliases, through which Florida residents can purchase Defendants' infringing products. *Id*. at ¶14. Defendants are selling identical items through the same product links and Defendants' e-commerce stores operating under the Seller Aliases are linked by unique identifiers that establish an interconnection among them. *Id*. at ¶17. In addition, Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities and the interworking of their counterfeiting operation. Plaintiff. *Id*. at ¶ 16.

These allegations are further substantiated by Plaintiff's Declaration. *See* Declaration of Zhu ("Decl. of Zhu"), attached hereto as **Exhibit 2**. Detailed in Zhu's Declaration, Defendants' unlawful activities have caused Plaintiff irreparably harm, including financial loss and reputational damages. *Id*. at ¶¶20-25. Further, Plaintiff has good reason to believe that, unless restrained, Defendants will conceal or transfer their U.S.-based assets beyond the jurisdiction of this Court. *Id*. at ¶17; *see also* Declaration of Palmer (Decl. of Palmer"), attached hereto as **Exhibit 3**, at ¶¶ 16-17.

Plaintiff is forced to file this action to protect the SHANGGUAN trademarks against infringement, as well as to protect unknowing consumers from purchasing counterfeit products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

## Statements of Facts

### A. Plaintiff's Trademark Rights

Plaintiff is the owner of all rights, title and interest in the SHANGGUAN mark, U.S. Trademark Registration No. 7,465,986. *See* Ex. 1. The registration is valid, subsisting, unrevoked,

unchallenged and uncancelled. The registration for the SHANGGUAN mark constitutes *prima facie* evidence of validity and of Plaintiff's exclusive right to use the SHANGGUAN mark pursuant to 15 U.S.C. §1057(b).

The SHANGGUAN mark is well recognized when associated with various towel products, especially with compressed travel and facial towels. Ex. 2, Decl. of Zhu, at ¶6. Genuine products bearing the SHANGGUAN mark are distributed through authorized e-commerce merchants over third-party e-commerce platforms, such as Walmart.com. *Id*. ¶¶6-8.

### B. Defendants' Unlawful Activities.

The success of SHANGGUAN has unfortunately attracted significant counterfeiting and/or infringing activities. Unauthorized individuals and entities have exploited the SHANGGUAN trademark, and the goodwill established by the SHANGGUAN brand within the industry, selling low-quality imitation counterfeits of SHANGGUAN Products. *Id*. at ¶7. Upon a closer examination of Defendants' product listing, examples of Defendants' infringing activities are highlighted in Plaintiff's Declaration. *Id*. at ¶8.

None of Defendants disclosed any information suggesting they were engaged in reselling SHANGGUAN products. *Id*. at ¶12. Further, it was apparent from customer complaints that customers were under the impression they had purchased genuine SHANGGUAN products from Defendants' online stores. *Id*. Plaintiff's well-pleaded allegations regarding the registration patterns of Defendants' online stores, similarities among their operations under their Seller Aliases, and common tactics employed to evade enforcement efforts establish a logical connection among Defendants and that Defendants are likely interrelated. *Id*. at ¶¶15-16; *see also* Ex. 3, Decl. of Palmer, at ¶¶6-10.

**Legal Standards**

A temporary restraining order is an appropriate remedy in a situation where a party is facing immediate irreparable harm that will likely occur before a hearing for preliminary injunction can be held. Mango's Tropical Cafe, Inc. v. Mango Martini Restaurant & Lounge, Inc., 844 F.Supp.2d 1246 (S.D.Fla. Dec. 31, 2011). The Lanham Act states that Courts "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. §1116(a).

A party seeking to obtain a preliminary injunction must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the plaintiff outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest. *Suntrust Bank v. Houghton Mifflin Company*, 268 F.3d 1257, 1265 (11th Cir. 2001) (citing *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir.1998)).

**Arguments**

**A.  Plaintiff Will Likely Succeed on the Merits of Its Trademark Claim**

To establish trademark infringement, a plaintiff needs to prove: "(1) that its valid mark was used in commerce by the defendant without consent, and (2) that the unauthorized use was likely to cause confusion, to cause mistake, or to deceive." *Dieter v. B & H Indus. of S.W. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989). Similarly, a false designation of origin claim requires (1) that the plaintiff has enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two. *Custom Mfg. & Eng'r., Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

4

Plaintiff has established both the validity and its ownership of the trademark in question. *See* Ex. 1. Plaintiff's SHANGGUAN mark, under U.S. Trademark Registration No. 7,465,986 is valid, subsisting, unrevoked and unchallenged. The registration for the SHANGGUAN mark creates a *prima facie* presumption of validity of a trademark. 15 U.S. § 1114(1). *See also Jordan Intern., Inc. v. United Industries Sales Organization, Inc.*, 699 F.Supp.268 (S.D.Fla. Feb. 22, 1988). In addition, the Court may take judicial notice of Plaintiff's trademark registration as published in the United States Patent and Trademark Office's official registry under Fed. R. Evid. 201(b)(2). Therefore, Plaintiff's valid trademark registration of the SHANGGUAN mark satisfies this prong of the test for trademark infringement.

A comparison of Plaintiff's SHANGGUAN mark to that used by Defendants in connection with the advertising and promotion and sale of Defendants' products reveals the obvious and counterfeit nature of Defendants' products. Zhu's declaration concludes that Defendants are not authorized retailers or resellers of SHANGGUAN products. *See* Ex. 2, Decl. of Zhu, at ¶¶10-14. Zhu's declaration further concludes that Defendants never had the right or authority to use the SHANGGUAN mark. *Id*. However, despite their constructive knowledge of Plaintiff's ownership of the SHANGGUAN mark, and lacking the authority to use it, Defendants persist in promoting, advertising, distributing, selling, and/or offering products for sale through their individual storefront on the e-commerce platforms.

In addition, Plaintiff has demonstrated that Defendants unauthorized use of the SHANGGUAN mark likely caused confusion to the consumers and created a false association to the SHANGGUAN brand. By advertising on Walmart.com, the same e-commerce platform that the Plaintiff uses for sales of genuine SHANGGUAN products, the likelihood of confusion is apparent. *Id*. at ¶¶9-15, 22. Defendants' engagement in unfair competition, marked by their

unauthorized use of the SHANGGUAN mark and selling products at a lower price, appears to be driven by an intent to deceive consumers.

Individually and collectively, these facts demonstrate that Defendants are willfully and deliberately infringing on Plaintiff's SHANGGUAN mark. *See Millennium Funding, Inc. v. 1701 Mgmt.*, 21-cv-20862-BLOOM/Otazo-Reyes, at *14 (S.D. Fla. Mar. 25, 2022) ("Where a party produces counterfeit goods, there is a presumption of likelihood of confusion."). Further, courts have found that evidence of constructive knowledge or evidence of willful blindness is sufficient to establish specific acts of direct infringement. *See Luxottica Group, S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1314-1315 (11th Cir. Aug. 7, 2019); *see also Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1339 (Oct. 19, 1999) ("The parties' outlets and customer bases need not be identical, but some degree of overlap should be present."). Courts have suggested that the stronger the case for willful blindness, the stronger the case for consumer confusion. Indeed, this Circuit has held that, "[d]issimilarities between the retail outlets for and the predominant customers of plaintiff's and defendant's goods lessen the possibility of confusion, mistake, or deception." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir. 1980), cert. denied 449 U.S. 899 (1980).

In conclusion, Plaintiff has established that it is more likely to succeed on the merits of the trademark infringement claims.

**B. There is No Adequate Remedy at Law, Plaintiff is Suffering and will Continue to Suffer Irreparable Harm in the Absence of Preliminary Relief**

Once Plaintiff establishes a likelihood of success on the merits, there is a presumption, established through case law and a recent amendment to the Lanham Act, that Plaintiff will suffer irreparable harm in the absence of preliminary relief. *See* 15 U.S.C. § 1116(a); *see also Hill v. Dinges*, 3:21-CV-165-MMH-PDB, at *11 n.5 (M.D. Fla. Sep. 13, 2021) (applying presumption);

*Tiramisu Intern, LLC v. Clever Imports LLC*, 741 F.Supp.2d 1279 (S.D. Fla. Aug. 11, 2010). Without equitable relief in the form of an injunction and asset freeze, Plaintiff is unable to be assured the availability of permanent relief later. *Levi Strauss Co. v. Sunrise Intern. Trading*, 51 F.3d 982 (11th Cir. 1995) (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)). Notably, trademark actions "are common venues for the issuance of preliminary injunctions." *Foxworthy v. Custom Tees, Inc.*, 879 F.Supp. 1200, 1219 (N.D.Ga. 1995) (internal citation omitted). Courts have found irreparable harm to be satisfied where the infringers' unauthorized use of Plaintiff's intellectual property causes confusion among consumers and damages business reputation and brand confidence. *Id*.

Here, consumer confusion is evident as consumers would not be able to identify a genuine SHANGGUAN product from the counterfeit products advertised and sold by Defendants. *See* Ex. 2, Decl. of Zhu, at ¶¶12-15. Further, Plaintiff has effectively demonstrated that it has incurred lost sales directly attributable to Defendants' willful infringement, and there is a compelling indication of potential future sales losses, supporting a finding of irreparable harm. *Id*. at ¶¶19-26.

In addition, given that Defendants conceal their true identities and operate from outside the United States, it is unlikely that Plaintiff can recover monetary damages award they might obtain. *Id*. at ¶¶ 15, 19, 24. Further, foreign online perpetrators such as Defendants are likely to cause irreparable harm by avoiding judgments rendered in United States courts. *Id*.; *see also* Ex. 3, Decl. of Palmer, at ¶18; *Foodcomm Int'l v. Barry*, 328 F.3d 300, 305 n.2 (7th Cir. 2003) (holding that the plaintiffs established a likelihood of irreparable injury with no adequate remedy at law where the defendants were Australian citizens with "no significant assets in the United States").

Therefore, Plaintiff is suffering and will continue to suffer irreparable harm, including financial loss and reputational damage, which cannot be adequately remedied.

### C. Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Will be Served with Entry of the Sought Injunctive Relief

"When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.*, 929 F. Supp. 473, 478 (D.D.C. 1996).

Courts in this district have held that the likelihood of confusion should be considered in evaluating the balance of harm to Plaintiff. *YETI Coolers, LLC v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule A*, 566 F.Supp.3d 1333 (S.D. Fla. Oct. 14, 2021). Similarly, the public interest would be served by an injunction. Trademark infringement "encroaches on the right of the public to be free of confusion as well as the synonymous right of the trademark owner to control his products' reputation." *TracFone Wireless, Inc. v. Hernandez*, 196 F.Supp.3d 1289 (S.D.Fla. July 21, 2016).

Therefore, the public interest favors issuance of the temporary restraining order in order to protect Plaintiff's respective trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiffs' genuine goods. *Id.; see also Acushnet Company v. 72golfshop.com*, Case No.: 14-cv-61184 (S.D.Fla. June 5, 2014); *Chanel, Inc. v. designerchanelgirl.com*, Case No.: 20-cv-62447 (S.D.Fla. Dec. 7, 2020).

Finally, an infringer cannot complain about the loss of ability to offer its infringing product. *Warner Bros. Entm't Inc. v. RDR Books*, 575 F.Supp.2d 513, 553 (S.D.N.Y. 2008) (citing *My–T*

8

*Fine Corp. v. Samuels*, 69 F.2d 76, 78 (2d Cir. 1934)) (Hand, J.). There can be no harm to Defendants since an injunction will merely require that they comply with the law, namely, the Lanham Act. *See Capitol Records v. Zahn*, Case No. 3:06-0212, 2007 WL 542816 at *4 (M.D. Tenn. Feb. 16, 2007). In contrast, "the wrongful denial of injunction may well encourage others to do what defendants have done, thus increasing the injury to [Plaintiff] and inflicting expense on [Plaintiff] to defend [its] intellectual property interests." *Ty, Inc. v. Publications Intern., Ltd.*, 81 F.Supp.2d 899, 903 (N.D.Ill., 2000).

In the instant case, the evidence establishes that Defendants intentionally promoted, advertised, and offered for sale their infringing products for the purpose of financial gain. Given that an injunction is sought to halt Defendants' unlawful profit-making activities, the balance of equities unquestionably tips in Plaintiff's favor.

Further, an injunction against defendants also serves the public interest by upholding trademark integrity, protecting consumers, and maintaining fair competition.

Finally, an injunction would enhance the Court's authority in delivering effective relief. Plaintiffs have valid concerns over potential recovery because, without an injunction, Defendants will unlikely make their assets available for recovery or adhere to the authority of this Court.

### The Equitable Relief Sought by Plaintiff is Appropriate

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the SHANGGUAN Mark is Appropriate

Pursuant to Rule 65(b)(1), courts have granted *ex parte* TROs "where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known

party cannot be located in time for a hearing." *Reno Air Racing Ass'n, Inc.*, 452 F.3d 1126, 1131 (9th Cir. 2006). "The weight of authority around the country appears to favor the granting of *ex parte* seizure orders in trademark counterfeiting cases, where fake versions of well-known brands are deliberately passed off to the public as the genuine article." *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F. Supp. 248, 249-50 (S.D. Fla. 1982) (internal citations omitted). The need for *ex parte* relief is evident and underscored where counterfeiters and pirating trademark infringers operate anonymously over the Internet. *Dell, Inc. v. BelgiumDomains, LLC*, No. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007); Columbia Pictures Indus., Inc. v. Jasso, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers").

Courts in the Southern District of Florida and elsewhere regularly authorize immediate injunctive relief in similar cases involving the unauthorized use of trademarks. *See adidas AG v. adidascrazylight2.com*, Case No.: 13-cv-21230 (S.D.Fla. J. Cecilia Altonaga, Apr. 16, 2013); *Safety Nailer LLC v. The Individuals*, Case No.21-cv-22703 (S.D.Fla. J. Beth Bloom, Sep.21,2021). The Eleventh Circuit has made clear that "[a] delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016).

In light of the substantial harm to Plaintiff that has and will continue to incur, the balance of harm clearly favors the immediate entry of a temporary restraining order. Consequently, Plaintiff proceeds *ex parte* for a temporary injunction requiring Defendants to immediately cease all advertisement and sale of SHANGGUAN products in connection with Defendants' Seller Alias. Such relief is necessary to stop the ongoing monetary loss and reputational damage to Plaintiff, and to prevent Defendants from benefiting from their unauthorized use of the SHANGGUAN mark.

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate

Section 1117(a) of Chapter 15, United States Code, entitles a Plaintiff to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing counterfeits and infringements of a mark. *YETI Coolers, LLC*, 566 F.Supp.3d at 1333 (citing *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("[a]n accounting for profits ... is an equitable remedy subject to the principles of equity.")).

Where, as here, Plaintiff seeks the equitable remedy of an accounting of profits, the Court has inherent authority to issue an asset restraining order to preserve the remedy, including, specifically, in cases brought pursuant to the Lanham Act. *See S.E.C. v. ETS Payphones. Inc.*, 408 F.3d 727, 734 (11th Cir. 2005); *Levi Strauss Co.*, 51 F.3d at 987; *Reebok International, Ltd. v. Marnatech Enterprises*, 970 F.2d 552, 559 (9th Cir. 1992).

Furthermore, courts have recognized "a very narrow band of cases in which *ex parte* orders are proper because notice to the defendant would render fruitless the further prosecution of the action." *Reno Air Racing Ass'n, Inc.*, 452 F.3d at 1131; *Ensida Energy Afs, LLC v. Gardi*, Case No.: 19-cv-60541 (S.D. Fla., Bloom, J. , Mar. 5, 2019).

Such a recognition applies to the instant case, where defendants may transfer their assets and prevent Plaintiff from meaningful recovery. Indeed, Plaintiff's investigation indicates that Defendants can easily transfer and conceal the funds sought to be restrained, and thereby thwart the Court's ability to grant meaningful relief and eviscerate the status quo. *See* Ex. 3, Decl. of Palmer, at ¶ 16.

In conclusion, Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' infringing activities, and that, unless Defendants' assets are restrained, Defendants will likely transfer or conceal their ill-gotten profit

to offshore bank accounts. Accordingly, entry of an order freezing funds in each of Defendants' financial accounts associated with Defendants' Seller Aliases is necessary and appropriate.

### A Bond Should Secure the Injunctive Relief

Federal Rule of Civil Procedure 65(c) provides:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. Fed.R.Civ.P. 65(c).

Pursuant to Fed. R. Civ. P. 65(c) and this Circuit's case law, the amount of the bond is left to the discretion of this Court. *Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1127 (11th Cir. 1997) (the amount of an injunction bond is within the sound discretion of the Court); *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted) ("Rule 65(c) invests the district court with discretion as to the amount of security required, if any."). In fact, this Circuit has held that no bond is required at all. *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. Unit B 1981) ("Under this court's interpretation of Rule 65(c), the amount of security required by the rule is a matter within the discretion of the trial court. Thus, the court 'may elect to require no security at all.'.").

Plaintiff respectfully submits that the strong and unequivocal nature of its evidence of intentional trademark infringement presented to this Court demonstrates that the risk of compensable harm to Defendants from imposition of an asset restraining order as that sought here is minimal. Given the limited number of Defendants in this case, Plaintiff therefore requests that the Court require a bond of no more than ten thousand U.S. dollars ($10,000).

### Conclusion

Defendants' unlawful activities are irreparably harming Plaintiff's business, Plaintiff's interest in its federally registered trademark and the consumers. Without entry of the requested

relief, Defendants' acts of willful trademark infringement will continue to harm Plaintiff and consumers. Therefore, for the foregoing reasons and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter, under seal, a Temporary Restraining.

June 2, 2025                                              Respectfully submitted,

/s/ Andrew J. Palmer
Andrew J. Palmer
Palmer Law Group, P.A.
401 E Las Olas Blvd, Suite 1400
Fort Lauderdale, FL 33308
Phone: 954-771-7050
ajpalmer@palmerlawgroup.com
***Attorney for Plaintiff***