# Exhibit 2

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-22251-BLOOM**

Enlai Zhu,

                        *Plaintiff*,

  v.

The Partnerships, Unincorporated Associations Identified on Schedule A,

                       *Defendants*.

_____/

**DECLARATION OF ENLAI ZHU IN SUPPORT OF THE
*EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER**

## DECLARATION OF ENLAI ZHU

I, Enlai Zhu, declare and state as follows:

1. I am over 18 years of age. I make this declaration in support of the *Ex Parte* Motion for Entry of a Temporary Restraining Order.

2. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

3. I am the owner of the federally registered trademark 尚官, which consists of two Chinese characters, phonetically pronounced as SHANGGUAN (the mark is hereinafter referred to as "SHANGGUAN"). The SHANGGUAN mark was registered with the United States Patent and Trademark Office on August 6, 2024, under Registration No. 7,465,986, for use with "Towels; Compressed towels; Cotton towels; Face towels" in Class 24. *See* **Exhibit 1**.

4. The SHANGGUAN mark is valid, subsisting, and in full force and effect. The registration of the SHANGGUAN mark constitutes *prima facie* evidence of its validity and conclusive evidence of my exclusive right to use the SHANGGUAN mark in connection with the goods identified therein and other commercial goods. The registration of the SHANGGUAN mark also provides constructive notice to all Defendants of the ownership and exclusive rights of the SHANGGUAN mark.

5. The SHANGGUAN trademark has seen consistent utilization in interstate commerce. Products bearing the SHANGGUAN mark have experienced substantial growth in market share. Globally distributed, including throughout the United States, SHANGGUAN products have achieved significant sales volumes, underscoring the brand's expanding presence and consumer acceptance on a global scale.

6. The SHANGGUAN mark is distinctive, signifying to the purchaser that the products come from or are authorized by me. As such, the goodwill associated with the SHANGGUAN mark is of incalculable and inestimable value. The SHANGGUAN mark is well recognized when associated with various towel products, especially with compressed travel and facial towels.

7. The success of SHANGGUAN has unfortunately attracted significant counterfeiting and/or infringing activities. Unauthorized individuals and entities have exploited the SHANGGUAN trademark and the goodwill established by the brand within the industry, selling low-quality imitation counterfeits of SHANGGUAN Products. This infringement has compelled me to initiate this legal action to safeguard and uphold its intellectual property rights.

8. In response to the pervasive counterfeiting and/or infringing of the SHANGGUAN mark, I have led an investigative effort, with the support of my team, to address these violations. The investigation has confirmed that Defendants are operating through online storefronts on the Walmart.com ecommerce platform. These storefronts are identified in detail in Schedule A of the Complaint, and their infringing activities are further documented in Infringing Evidence. Because both Schedule A and the Infringing Evidence identify all Defendants by their seller aliases, I have requested that they be filed under seal.



| 尚官 ("SHANGGUAN") Trademark | Defendants' Unauthorized Use |
|---|---|



(A few examples of infringing use, including a comparison between the SHANGGUAN mark and Defendants' unauthorized use of the mark, are provided above to illustrate the infringing nature of Defendants' compressed towel products.)

9.  These storefronts are being used to advertise, promote, offer for sale, or sold goods bearing SHANGGUAN mark ("Accused Products,") to consumers across the United States, including in the State of Florida and specifically within the Southern District of Florida. Notably, all Defendants' online stores offer shipping to Florida. A few examples of Defendants' infringing activities and infringing products are detailed in the following pages.

10. The Infringing Evidence, which is to be filed under seal, includes true and correct copies of screenshots and photographs, produced as part of my investigation of the counterfeit and/or

3

infringing Accused Products sold and offered for sale by the Defendant online stores bearing the SHANGGUAN mark. I personally reviewed and analyzed each of the screenshots and photographs of the counterfeit and/or infringing products contained in the infringing evidence and determined that counterfeit and/or infringing Accused Products are being offered for sale to residents of Florida using the SHANGGUAN mark.

11.  My conclusion was drawn from a detailed visual examination of the products displayed on Defendants' online storefronts, considering various aspects such as their listed prices, characteristics typically associated with websites distributing counterfeit and/or infringing goods, the fact that these stores offer shipping to Florida, and notably, their lack of any authorization to use the SHANGGUAN mark. Further, I compared the pricing of the genuine products against those offered by the Defendants. Defendants sell their infringing products at substantially lower prices, highlighting the significant discrepancy and reinforcing the conclusion of infringement.

12.  Upon a closer examination of Defendants' online storefronts, it became evident that none of Defendants hold the status of authorized retailers. Moreover, examination of Defendants' product listings revealed that none of Defendants disclosed any information suggesting they were engaged in reselling SHANGGUAN products. Additionally, it was apparent from customer complaints that customers were under the impression they had purchased genuine SHANGGUAN products from Defendants' online stores. Consequently, these customers were misled into believing they had acquired products directly from authorized sellers, expecting the high quality and customer service that are characteristic of authentic SHANGGUAN products.

13.  Defendants facilitate sales by designing the online stores so that these online stores appear to be authorized online merchants to unknowing consumers. Many of Defendants online stores look sophisticated and accept payment in U.S. dollars and funds from U.S. bank accounts via

credit cards, PayPal, Affirm, or other online payment methods. These online stores often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. I have not licensed or authorized these Defendants to use the SHANGGUAN trademark, and none of the Defendants are authorized retailers of genuine SHANGGUAN Products.

14.  Many of these online Defendants also deceive unknowing consumers by using the SHANGGUAN trademark without authorization within the content, text, and/or meta tags of their online stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for genuine SHANGGUAN products.

15.  Based on my knowledge and belief, Defendants regularly register or acquire new online stores for the purpose of offering for sale and selling infringing products. Defendants commonly engage in fraudulent conduct when registering online stores by providing false, misleading, and/or incomplete information to ecommerce platforms to prevent discovery of their true identities and the scope of their online operation. These online stores use electronic mail to communicate with platforms and for the purposes of electronic financial transactions. Through these tactics, Defendants are able to conceal their identities and the full scope and interworking of their infringing and counterfeiting operation, and to avoid being shut down.

16.  Further, Accused Products sold by Defendants bear similar irregularities, suggesting that the infringing products were from a common source and that Defendants are likely interrelated. Defendants' online stores include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images.

17. Based on my knowledge of other similar cases against counterfeiting and/or infringing, once they receive notice of a lawsuit, counterfeiters and infringers would often register or acquire new online marketplace accounts under new aliases. They would also ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. Counterfeiters and infringers typically operate multiple merchant accounts and vendor accounts such as PayPal accounts behind layers of payment gateways so that they can continue operation despite the enforcement efforts. I believe Defendants in the present case maintain offshore bank accounts and regularly move funds from their U.S. based payment accounts to the offshore bank accounts outside the jurisdiction of this Court.

18. Further, Defendants are likely in constant communication with each other via Chinese social media apps such as QQ and WeChat, and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

19. Each sale made by Defendants results in a direct financial loss to me and to the authorized merchants. However, monetary damages cannot adequately compensate for the ongoing infringement because monetary damages fail to address the loss of control of and damage to the brand reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to the reputation and goodwill by acts of infringement.

20. Consequently, SHANGGUAN's goodwill and reputation are irreparably damaged because the SHANGGUAN mark is used in connection with the offering for sale or sale of goods not authorized or approved by me. Moreover, brand confidence is damaged, which can result in a loss

of future sales and market share. The extent of harm to the brand reputation and goodwill and the possible diversion of customers due to loss of brand confidence are largely unquantifiable.

21. I am further irreparably harmed by the unauthorized use of the SHANGGUAN mark because counterfeiters take away my ability to control the nature and quality of the SHANGGUAN products. Loss of quality control over goods offered for sale or sold under the SHANGGUAN mark and, in turn, loss of control over the brand reputation, is neither calculable nor compensable.

22. The use of the SHANGGUAN mark in connection with the offering for sale or sale of goods not authorized by me is likely causing and will continue to cause consumer confusion, which weakens the brand recognition and reputation. Consumers who mistakenly believe that the Accused Products they have purchased are authentic will come to believe that EIECHSE products are of low-quality. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine SHANGGUAN products, resulting in a loss, or undermining of the brand reputation and goodwill. Indeed, there is damage to the brand reputation and goodwill even if consumers know the goods, they are purchasing are counterfeit. Prospective consumers who see inferior Accused Products used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of the SHANGGUAN products. Such post-sale confusion results in damage to the reputation and correlates to a loss of unquantifiable future sales.

23. I am further irreparably damaged due to a loss of exclusivity. The SHANGGUAN mark is distinctive and signifies to consumers that the products exclusively originate from authorized merchants. When counterfeiters and/or infringers use the SHANGGUAN mark on goods without authorization, the exclusivity of the SHANGGUAN products, as well as the brand reputation, is damaged and eroded, resulting in a loss of unquantifiable future sales.

24. Defendants' true identities and locations are now unknown. However, upon information and belief, Defendants are primarily individuals and business entities who reside in the People's Republic of China or other foreign jurisdictions. Tactics used by the Defendants to conceal their identities, and the full scope of their counterfeiting operation make it virtually impossible for me to learn Defendants' true identities and their network.

25. In order to facilitate our ongoing investigation into Defendants' identity and location, the scope of Defendants' counterfeiting and infringing activities, and the profits derived from sales of the Accused Products, I respectfully request that the Court grant the Motion for Electronic Service of Process, and the Motion for Leave to Conduct Expedited Third Party Discovery. Without an order permitting expedited third-party discovery and permitting electronic service of process, I will not be able to identify and serve Defendants.

26. I am suffering and will continue to suffer irreparably harm, including financial loss and reputational damage, unless a temporary restraining order is entered to prohibit Defendants from further infringement upon the SHANGGUAN mark; and to restrain Defendants' U.S. based assets.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2 day of June 2024, in Guangzhou, China.

*Enlai Zhu*
_____
Enlai Zhu