# Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-22251-BLOOM

Enlai Zhu,

                        *Plaintiff*,

v.

The Partnerships, Unincorporated Associations Identified on Schedule A,

                        *Defendants*.
_____/

**DECLARATION OF ANDREW PALMER IN SUPPORT OF PLAINTIFF'S**
**_EX PARTE_ MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER**

I, Andrew Palmer, declare and state as follows:

1. I am an attorney duly admitted to practice before this District Court.

2. I am over 18 years of age. This declaration is based upon my personal knowledge of the facts stated herein. I make this declaration in support of Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order. If called as a witness, I could and would testify to the statements made herein.

3. I have reviewed the screenshots of the web pages and the evidence photos, which Plaintiff requested be filed under seal because they identify all Defendants by their Seller Aliases. DE 7.

4. Specifically, I have reviewed the images and depictions displayed on the websites, including the domain name, product listing, information of the products, and detailed seller information of each seller identified on Schedule A.

5. I have litigated cases under the Lanham Act against primarily overseas e-commerce sellers in this District and other federal district courts. Through my practice, I have acquired knowledge

1

regarding behaviors that are indicative of counterfeiting. After reviewing the infringing evidence, it is apparent that the activities of the sellers identified in Schedule A are consistent with the general patterns of online counterfeiting activities.

6. In my experience in supervising anticounterfeiting and infringement investigations, I have found that overseas e-commerce sellers that violate U.S. intellectual property rights frequently operate in large, interlocking networks.

7. In order to avoid liability and being shut down, trademark infringers like Defendants in the instant case frequently register their e-commerce stores under false names and/or create layers of shell companies.

8. I have reached this conclusion, partly based on a thorough review of expedited discovery evidence productions from e-commerce platforms in prior similar cases. These e-commerce platforms productions typically include registration information of e-commerce sellers, which often lacks crucial details such as complete names, addresses, and telephone numbers.

9. Additionally, even when the information submitted to the e-commerce platforms by the sellers seems legitimate or suggests that the sellers are based in the United States, it is common for the information to be false or misleading. Trademark infringers like Defendants sometimes utilize the identifying information of American individuals and businesses to set up and operate their e-commerce stores without their knowledge or consent.

10. Identifying information provided by trademark infringers like Defendants to e-commerce platforms is inherently unreliable with the exception of the e-mail addresses that are relied upon by Defendants to access their accounts and to receive communications from the platform.

11. In the intellectual property cases that I have prosecuted, I have observed defendants engage in spoliation of evidence following service of the lawsuit. This includes altering registration information to list different owners, and alternating product listings.

12. In the present case, Defendants conduct their business through the Walmart.com e-commerce platform. Defendants use this platform to support and drive consumer traffic to their counterfeiting operations. Defendant have advertised, promoted, offered for sale, or sold goods bearing Plaintiff's ferally registered trademark.

13. Defendants have their transactions processed by cross-border payment service providers such as PayPal, Payoneer, and Hyperwallet. Although Walmart.com is not the ultimate merchant, it facilitates payment processing for its sellers who operate on its platform. By using a seller's unique merchant identification number, Walmart.com can identify a specific Seller Alias with any transactions and identify the merchant's funds held in sub-accounts within the aggregate account.

14. Based on my experience in similar cases with Walmart.com, I reasonably believe that Walmart.com and the third-party service providers, and their related companies and affiliates, have the ability to and will in fact comply with a temporary restraining order sought by Plaintiff.

15. Many Defendants' e-commerce stores have provided incomplete and/or false names and physical address information in their registrations for the Defendant Internet Stores in order to conceal their locations and avoid liability. In addition, many Defendants have addresses, phone numbers, and other contact information provided in Defendants' e-commerce stores indicate that Defendants reside in or operate from the People's Republic of China, or other foreign countries. All Defendants have established Internet-based businesses and utilize electronic means as reliable forms of contact, demonstrating the reliability of this method of communication by which Defendants may be apprised of the pendency of this action.

16. The e-commerce stores at issue are entirely under Defendants' control. Therefore, Defendants have the ability to change the ownership or modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership rights associated with the Seller Aliases. These changes can occur rapidly after Defendants receive notice of this legal action.

17. If Defendants receive advance notice of Plaintiff's Motion for Temporary Restraining Order, they can easily transfer and conceal the funds sought to be restrained. This would undermine the Court's ability to grant effective relief and maintain the status quo.

18. With their concealed internet identity, Defendants, as foreign online entities, are likely to cause irreparable harm to Plaintiff by evading judgments issued by United States courts. Without a temporary restraining order issued without notice, Defendants can and may significantly alter the status quo before the Court can assess the parties' respective rights.

19. At this time, Defendants have not been notified of this action. The true identities of Defendants remain unknown to me.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

June 2, 2025                                  Respectfully submitted,

                                              /s/ Andrew J. Palmer
                                              Andrew J. Palmer
                                              *Attorney for Plaintiff*