UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-22251-BLOOM

Enlai Zhu,

                *Plaintiff*,

v.

The Partnerships, Unincorporated Associations Identified on Schedule A,

                *Defendants*.

_____/

**PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF
TEMPORARY RESTRAINING ORDER AND ORDER RESTRAINING
TRANSFER OF ASSETS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff, Enlai Zhu ("Enlai Zhu" or "Plaintiff"), hereby does apply, on an *ex parte* basis, for entry of a temporary restraining order and an order restraining transfer of assets against Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule A hereto ("Defendants")[1] pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65, The All Writs Act, 28 U.S.C. § 1651(a), and this Court's inherent authority. In support thereof, Plaintiff submits the following memorandum of law.

**Introduction**

Plaintiff filed the instant civil action to combat the willful and intentional counterfeiting and infringement of its federally registered trademark 尚官 (referred herein phonetically as the "SHANGGUAN" mark) under U.S. Trademark Registration No. 7,465,986. *See* **Exhibit 1**.

---

[1] In compliance with the Court's Omnibus Order, counsel for Plaintiff conducted a search on the Public Access to Court Electronic Records ("PACER") of case filings through the United States case index search, confirming that Plaintiff has not filed against any of the Defendants at issue in any other district. (*See* [DE 5].)

1

Each Defendant is knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling goods bearing and/or using counterfeits and confusingly similar imitations of Plaintiff's registered trademark within this district and throughout the United States by operating Internet based e-commerce stores under the seller names identified on Schedule A hereto (the "E-commerce Store Names" or "Seller Aliases"). Specifically, Plaintiff has obtained evidence clearly demonstrating that each Defendant: (a) is engaged in the advertising, offering for sale, and sale of counterfeit and infringing versions of Plaintiff's goods; and (b) accomplish its sales of counterfeit goods via the Internet using, at least, e-commerce stores operating under the E-commerce Store Names. Based on this evidence, Plaintiff's Complaint alleges claims for trademark counterfeiting and infringement, and false designation of origin.

## This Court has personal jurisdiction over each Defendant

Plaintiff's investigation into each Defendant confirmed that each Defendant is subject to personal jurisdiction in this district, because each Defendant directs business activities towards and conducts business with consumers throughout the United States, including within the State of Florida and this district through, at least, their respective e-commerce stores accessible and doing business in Florida and operating under the E-commerce Store Names. *See* Compl. ¶¶ 5-6 [DE 1]; *see also* Declaration of Enlai Zhu in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Order Restraining Transfer of Assets ("Decl. of Zhu"), ¶¶ 9-10, filed herewith as **Exhibit 2**. As shown in the attached infringement evidence (**Exhibits 3, 4, 5**), each defendant offers to ship the infringing products to addresses within this judicial district.

Thus, as each Defendant has offered to sell the infringing products within the State of Florida and this district, which causes Plaintiff to suffer irreparable injury and damages, this Court has personal jurisdiction over each Defendant pursuant to Florida Statutes § 48.193(1)(a)(1)-(2) and

2

§ 48.193(1)(a)(6).[2] Alternatively, based on their overall contacts with the United States, each Defendant is subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) each Defendant is not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

Each Defendant's unlawful activities deprive Plaintiff's right to determine the way its trademark is presented to the public. Indeed, each Defendant has and continues to wrongfully trade and capitalize on the reputation, goodwill and the commercial value of Plaintiff's trademark. By their infringing activities, each Defendant is defrauding Plaintiff and consumers for their own benefit. Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiff ongoing irreparable harm. Accordingly, Plaintiff is seeking entry of a temporary restraining order prohibiting Defendants' further wrongful use of Plaintiff's trademark.

Plaintiff also seeks to restrain Defendants' unlawful profits. The Lanham Act allows Plaintiff to recover the unlawful profits gained through Defendants' distribution and sales of counterfeit goods. *See* 15 U.S.C. § 1117(a). Considering the inherently deceptive nature of the counterfeiting business, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless they are restrained. Accordingly, to preserve the disgorgement remedy and all other equitable remedies available to it, Plaintiff seeks an *ex parte* order restraining Defendants' assets.

---

[2] Florida's long-arm statute confers specific personal jurisdiction over a nonresident defendant "for any cause of action arising from . . . [c]omitting a tortious act within [Florida]." Fla. Stat. §48.193(1)(a)(2). The Eleventh Circuit has specifically stated that trademark infringement claims involve "tortious acts" under Florida's long-arm statute. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013); *Licciardello v. Lovelady*, 544 F.3d 1280, 1283-84 (11th Cir. 2008) Moreover, trademark infringement need not occur where the owner of the trademark resides, as "the tort of trademark infringement cause[s] injury and thus 'occurr[s] in Florida by virtue of the website's accessibility in Florida.'" *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1354 (quoting *Licciardello*, 544 F.3d at 1283).

## Statement of Facts

A. **Plaintiff's Trademark Rights**

Plaintiff is the owner of all rights, title and interest in the SHANGGUAN mark, U.S. Trademark Registration No. 7,465,986. *See* Ex. 1. The registration is valid, subsisting, unrevoked, unchallenged and uncancelled.

The SHANGGUAN mark is well recognized when associated with various towel products, especially with compressed travel and facial towels. Ex. 2, Decl. of Zhu, at ¶6. Genuine products bearing the SHANGGUAN mark are distributed through authorized e-commerce merchants over third-party e-commerce platforms, such as Walmart.com. *Id.* ¶8.

The SHANGGUAN mark, consisting of two Chinese characters, is distinctive, signaling to consumers that the products come from authorized retailers. The SHANGGUAN mark is well recognized when associated with various towel products, especially with compressed travel and facial towels. *Id.* ¶4.

The registration for the SHANGGUAN mark constitutes *prima facie* evidence of validity and of Plaintiff's exclusive right to use the SHANGGUAN mark pursuant to 15 U.S.C. §1057(b). The registration of the SHANGGUAN mark also provides constructive notice to all Defendants of the ownership and exclusive rights of the SHANGGUAN mark. *See* Ex. 2, Decl. of Zhu, at ¶4.

B. **Defendants' Wrongfully Uses Plaintiff's Trademark**

The success of SHANGGUAN has unfortunately attracted significant counterfeiting and/or infringing activities. Defendants do not have, nor have they ever had, the right or authority to use the SHANGGUAN mark for any purpose. *See* Decl. of Zhu, at ¶7. However, despite their known lack of authority to do so, Defendants are promoting and otherwise advertising, distributing, offering for sale, and/or selling, through their respective E-commerce Store Names, goods bearing counterfeit trademark that are exact copies of one or more of the SHANGGUAN mark, without

4

authorization. *Id.* ¶7. Unauthorized individuals and entities have exploited the SHANGGUAN trademark, the reputation and the goodwill established by the SHANGGUAN brand within the industry, selling low-quality imitation counterfeits of SHANGGUAN products. *Id*.

Upon a closer examination of Defendants' product listings revealed that none of Defendants disclosed any information suggesting they were engaged in reselling SHANGGUAN products. Defendants' activities amount to nothing more than unlawful operations, infringing on Plaintiff's trademark rights. *Id.* ¶¶8-12. Defendants' e-commerce stores and associated payment accounts are a substantial part of how Defendants further their scheme and. Additionally, it was apparent from customer complaints that customers were under the impression they had purchased genuine SHANGGUAN products from Defendants' online stores. *Id*. ¶¶13-14.

Plaintiff's well-pleaded allegations regarding the registration patterns of Defendants' online stores, similarities among their operations under their Seller Aliases, and common tactics employed to evade enforcement efforts establish a logical connection among Defendants and that Defendants are likely interrelated.

## **Legal Standards**

A temporary restraining order is an appropriate remedy in a situation where a party is facing immediate irreparable harm that will likely occur before a hearing for preliminary injunction can be held. Mango's Tropical Cafe, Inc. v. Mango Martini Restaurant & Lounge, Inc., 844 F.Supp.2d 1246 (S.D.Fla. Dec. 31, 2011). The Lanham Act states that Courts "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. §1116(a).

A party seeking to obtain a preliminary injunction must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the plaintiff outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest. *Suntrust Bank v. Houghton Mifflin Company*, 268 F.3d 1257, 1265 (11th Cir. 2001) (citing *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir.1998)).

## Argument

**A. A Temporary Restraining Order is Essential to Prevent Immediate Injury.**

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "specific facts in an affidavit . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). This is such a case.

Each Defendant fraudulently promotes, advertises, offers to sell, and sells goods bearing counterfeits and infringements of the SHANGGUAN mark via their e-commerce stores using the E-commerce Store Names. By its actions, each Defendant is creating a false association in the minds of consumers between itself and Plaintiff. Specifically, Defendants are wrongfully using counterfeits and infringements of the SHANGGUAN mark to increase consumer traffic to their illegal operations. The entry of a temporary restraining order will serve to immediately stop Defendants from benefiting from their wrongful use of the SHANGGUAN mark and will preserve the status quo until such time as a hearing can be held. *See Dell Inc. v. BelgiumDomains, LLC*, Case No. 07-22674 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants").

Absent a temporary restraining order without notice, Defendants can and, based upon Plaintiff's counsel's experience, will likely significantly alter the status quo before the Court can determine the parties' respective rights. In particular, the Internet based e-commerce stores at issue are under Defendants' complete control. Thus, each Defendant can change the ownership or modify its e-commerce store account data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the seller aliases. *See* Declaration of Andrew Palmer in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Order Restraining Transfer of Assets ("Decl. of Palmer"), ¶11, filed herewith as **Exhibit 6**. Such modifications can happen in a short span of time after Defendants are provided with notice of this action. *Id*. Thus, each Defendant can easily electronically transfer and secret the funds sought to be restrained if they obtain advance notice of Plaintiff's Application for Temporary Restraining Order and thereby thwart the Court's ability to grant meaningful relief and can completely erase the status quo. *Id*. ¶13. As each Defendant engages in unlawful counterfeiting activities, Plaintiff has no reason to believe they will make their assets available for recovery pursuant to an accounting of profits or other equitable remedies or will adhere to the authority of this Court any more than they have adhered to federal trademark law. *Id*. ¶12.

Moreover, federal courts have long recognized that civil actions against counterfeiters – whose very businesses are built around the deliberate misappropriation of rights and property belonging to others – present special challenges that justify proceeding on an *ex parte* basis. *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"); *St-Honore v. Individuals, Bus. Entities, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 24-23663-Civ-Bloom, 2024 U.S. Dist. LEXIS 238083 (S.D. Fla.

Sept. 26, 2024, docketed Sept. 27, 2024) (Order granting the plaintiffs a temporary restraining order and restraining the defendants' assets and defendants' related assets). This Court should prevent an injustice from occurring by issuing an *ex parte* temporary restraining order that precludes Defendants from continuing to display their infringing content or modifying or deleting any related content or data. Only such an order will prevent ongoing harm and maintain the status quo.

### B. Plaintiff Is Likely Succeed on the Merits of the Trademark Infringement Claims

To establish trademark infringement, a plaintiff needs to prove: "(1) that its valid mark was used in commerce by the defendant without consent, and (2) that the unauthorized use was likely to cause confusion, to cause mistake, or to deceive." *Dieter v. B & H Indus. of S.W. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989). Similarly, a false designation of origin claim requires (1) that the plaintiff has enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two. *Custom Mfg. & Eng'r., Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

#### a) Validity, ownership, and Defendant's unauthorized use

Here, Plaintiff has established both the validity and its ownership of the trademark in question. *See* Ex. 1. Plaintiff's SHANGGUAN mark, under U.S. Trademark Registration No. 7,465,986 is valid, subsisting, unrevoked and unchallenged. The registration for the SHANGGUAN mark creates a *prima facie* presumption of validity of a trademark. 15 U.S. § 1114(1). *See also Jordan Intern., Inc. v. United Industries Sales Organization, Inc.*, 699 F. Supp. 268 (S.D.Fla. Feb. 22, 1988). Further, Defendants' unauthorized use of the SHANGGUAN mark on competing goods is documented in the infringing evidence. *See* Ex. 2, Decl. of Zhu, at ¶¶8-12. Plaintiff has never licensed, assigned, or otherwise consented to that use. *See Id*. ¶13.

Therefore, Plaintiff's valid trademark registration and Defendants' unauthorized use satisfies this prong of the test for trademark infringement.

b) <u>**Likelihood of confusion**</u>

The Eleventh Circuit uses a seven-factor test in determining the likelihood of confusion. *See Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1506 (11th Cir. 1985). These factors are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendant's intent; and (7) evidence of actual confusion. <u>See</u> 675 F.2d 1160, 1164 (11th Cir. 1982). *Id.*; *see also Lipscher v. LRP Publ'ns, Inc.,* 266 F.3d 1305, 1303 (11th Cir. 1997). The seven factors listed are to be weighed and balanced and no single factor is dispositive. *Id*.

In addition, Plaintiff has demonstrated that Defendants unauthorized use of the SHANGGUAN mark likely caused confusion to the consumers and created a false association to the SHANGGUAN brand.

The SHANGGUAN mark, consisting of two Chinese characters unrelated to towel products, is inherently distinctive and sits on the strongest end of the trademark spectrum. *See* Ex. 2, Decl. of Zhu, at ¶3. By using the identical mark on their infringing products and advertising on the same e-commerce platforms, where authorized sellers promote and sell the genuine SHANGGUAN products, the likelihood of confusion is apparent. *Id*. ¶¶9-15, 22. Defendants' actions, including unfair competition and selling at lower prices, suggest an intent to deceive consumers.

Individually and collectively, these facts demonstrate that Defendants are willfully and deliberately infringing on Plaintiff's SHANGGUAN mark. *See Millennium Funding, Inc. v. 1701 Mgmt*., 21-cv-20862-BLOOM/Otazo-Reyes, at *14 (S.D. Fla. Mar. 25, 2022) ("Where a party produces counterfeit goods, there is a presumption of likelihood of confusion."). Further, courts have found that evidence of constructive knowledge or evidence of willful blindness is sufficient to establish specific acts of direct infringement. *See Luxottica Group, S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1314-1315 (11th Cir. Aug. 7, 2019); *see also Frehling Enterprises, Inc. v.*

9

*International Select Group, Inc.*, 192 F.3d 1330, 1339 (Oct. 19, 1999) ("The parties' outlets and customer bases need not be identical, but some degree of overlap should be present."). Courts have suggested that the stronger the case for willful blindness, the stronger the case for consumer confusion. Indeed, this Circuit has held that, "[d]issimilarities between the retail outlets for and the predominant customers of plaintiff's and defendant's goods lessen the possibility of confusion, mistake, or deception." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir. 1980), cert. denied 449 U.S. 899 (1980).

In conclusion, Plaintiff has established that it is more likely to succeed on the merits of the trademark infringement claims.

## C. There is No Adequate Remedy at Law, Plaintiff is Suffering and will Continue to Suffer Irreparable Harm in the Absence of Preliminary Relief

Once Plaintiff establishes a likelihood of success on the merits, there is a presumption, established through case law and a recent amendment to the Lanham Act, that Plaintiff will suffer irreparable harm in the absence of preliminary relief. *See* 15 U.S.C. § 1116(a); *see also Hill v. Dinges*, 3:21-CV-165-MMH-PDB, at *11 n.5 (M.D. Fla. Sep. 13, 2021) (applying presumption); *Tiramisu Intern, LLC v. Clever Imports LLC*, 741 F.Supp.2d 1279 (S.D. Fla. Aug. 11, 2010). Without equitable relief in the form of an injunction and asset freeze, Plaintiff is unable to be assured the availability of permanent relief later. *Levi Strauss Co. v. Sunrise Intern. Trading*, 51 F.3d 982 (11th Cir. 1995) (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)). Notably, trademark actions "are common venues for the issuance of preliminary injunctions." *Foxworthy v. Custom Tees, Inc.*, 879 F.Supp. 1200, 1219 (N.D.Ga. 1995) (internal citation omitted). Courts have found irreparable harm to be satisfied where the infringers' unauthorized use of Plaintiff's intellectual property causes confusion among consumers and damages business reputation and brand confidence. *Id.*

Here, consumer confusion is evident as consumers would not be able to identify a genuine SHANGGUAN product from the counterfeit products advertised and sold by Defendants. *See* Ex. 2, Decl. of Zhu, at ¶¶9-15. Further, Plaintiff has effectively demonstrated that it has incurred lost sales directly attributable to Defendants' willful infringement, and there is a compelling indication of potential future sales losses, supporting a finding of irreparable harm. *Id*. at ¶¶19-26.

In addition, given that Defendants conceal their true identities and operate from outside the United States, it is unlikely that Plaintiff can recover monetary damages award they might obtain. *Id*. at ¶¶ 15, 19, 24; *see also* Ex. 6, Decl. of Palmer, at ¶¶11-14. Further, foreign online perpetrators such as Defendants are likely to cause irreparable harm by avoiding judgments rendered in United States courts. *Id*.; *see also* Ex. 3, Decl. of Palmer, at ¶18; *Foodcomm Int'l v. Barry*, 328 F.3d 300, 305 n.2 (7th Cir. 2003) (holding that the plaintiffs established a likelihood of irreparable injury with no adequate remedy at law where the defendants were Australian citizens with "no significant assets in the United States").

Therefore, Plaintiff is suffering and will continue to suffer irreparable harm, including financial loss and reputational damage, which cannot be adequately remedied.

**D. Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Will be Served with Entry of the Sought Injunctive Relief**

"When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc*., 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.*, 929 F. Supp. 473, 478 (D.D.C. 1996).

11

Courts in this district have held that the likelihood of confusion should be considered in evaluating the balance of harm to Plaintiff. *YETI Coolers, LLC v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule A*, 566 F.Supp.3d 1333 (S.D. Fla. Oct. 14, 2021). Similarly, the public interest would be served by an injunction. Trademark infringement "encroaches on the right of the public to be free of confusion as well as the synonymous right of the trademark owner to control his products' reputation." *TracFone Wireless, Inc. v. Hernandez*, 196 F.Supp.3d 1289 (S.D.Fla. July 21, 2016).

Therefore, the public interest favors issuance of the temporary restraining order in order to protect Plaintiff's respective trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiffs' genuine goods. *Id.; see also Acushnet Company v. 72golfshop.com*, Case No.: 14-cv-61184 (S.D.Fla. June 5, 2014); *Chanel, Inc. v. designerchanelgirl.com*, Case No.: 20-cv-62447 (S.D.Fla. Dec. 7, 2020).

Finally, an infringer cannot complain about the loss of ability to offer its infringing product. *Warner Bros. Entm't Inc. v. RDR Books*, 575 F.Supp.2d 513, 553 (S.D.N.Y. 2008) (citing *My–T Fine Corp. v. Samuels*, 69 F.2d 76, 78 (2d Cir. 1934)) (Hand, J.). There can be no harm to Defendants since an injunction will merely require that they comply with the law, namely, the Lanham Act. *See Capitol Records v. Zahn*, Case No. 3:06-0212, 2007 WL 542816 at *4 (M.D. Tenn. Feb. 16, 2007). In contrast, "the wrongful denial of injunction may well encourage others to do what defendants have done, thus increasing the injury to [Plaintiff] and inflicting expense on [Plaintiff] to defend [its] intellectual property interests." *Ty, Inc. v. Publications Intern., Ltd.*, 81 F.Supp.2d 899, 903 (N.D.Ill., 2000).

In the instant case, the evidence establishes that Defendants intentionally promoted, advertised, and offered for sale their infringing products for the purpose of financial gain.

Given that an injunction is sought to halt Defendants' unlawful profit-making activities, the balance of equities unquestionably tips in Plaintiff's favor.

Further, an injunction against defendants also serves the public interest by upholding trademark integrity, protecting consumers, and maintaining fair competition.

Finally, an injunction would enhance the Court's authority in delivering effective relief. Plaintiffs have valid concerns over potential recovery because, without an injunction, Defendants will unlikely make their assets available for recovery or adhere to the authority of this Court.

### The Equitable Relief Sought by Plaintiff is Appropriate

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

**A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the SHANGGUAN Mark is Appropriate**

Pursuant to Rule 65(b)(1), courts have granted *ex parte* TROs "where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." *Reno Air Racing Ass'n, Inc.*, 452 F.3d 1126, 1131 (9th Cir. 2006). "The weight of authority around the country appears to favor the granting of *ex parte* seizure orders in trademark counterfeiting cases, where fake versions of well-known brands are deliberately passed off to the public as the genuine article." *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F. Supp. 248, 249-50 (S.D. Fla. 1982) (internal citations omitted). The need for *ex parte* relief is evident and underscored where counterfeiters and pirating trademark infringers operate anonymously over the Internet. *Dell, Inc. v. BelgiumDomains, LLC*, No. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007); Columbia Pictures Indus., Inc. v. Jasso, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that

13

"proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers").

Courts in the Southern District of Florida and elsewhere regularly authorize immediate injunctive relief in similar cases involving the unauthorized use of trademarks. *See adidas AG v. adidascrazylight2.com*, Case No.: 13-cv-21230 (S.D.Fla. J. Cecilia Altonaga, Apr. 16, 2013); *Safety Nailer LLC v. The Individuals*, Case No.21-cv-22703 (S.D.Fla. J. Beth Bloom, Sep.21,2021). The Eleventh Circuit has made clear that "[a] delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016).

In light of the substantial harm to Plaintiff that has and will continue to incur, the balance of harm clearly favors the immediate entry of a temporary restraining order. Consequently, Plaintiff proceeds *ex parte* for a temporary injunction requiring Defendants to immediately cease all advertisement and sale of SHANGGUAN products in connection with Defendants' Seller Alias. Such relief is necessary to stop the ongoing monetary loss and reputational damage to Plaintiff, and to prevent Defendants from benefiting from their unauthorized use of the SHANGGUAN mark.

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate

Section 1117(a) of Chapter 15, United States Code, entitles a Plaintiff to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing counterfeits and infringements of a mark. *YETI Coolers, LLC*, 566 F.Supp.3d at 1333 (citing *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("[a]n accounting for profits ... is an equitable remedy subject to the principles of equity.")).

Where, as here, Plaintiff seeks the equitable remedy of an accounting of profits, the Court has inherent authority to issue an asset restraining order to preserve the remedy, including, specifically, in cases brought pursuant to the Lanham Act. *See S.E.C. v. ETS Payphones. Inc.*, 408

14

F.3d 727, 734 (11th Cir. 2005); *Levi Strauss Co.*, 51 F.3d at 987; *Reebok International, Ltd. v. Marnatech Enterprises*, 970 F.2d 552, 559 (9th Cir. 1992).

Furthermore, courts have recognized "a very narrow band of cases in which *ex parte* orders are proper because notice to the defendant would render fruitless the further prosecution of the action." *Reno Air Racing Ass'n, Inc.*, 452 F.3d at 1131; *Ensida Energy Afs, LLC v. Gardi*, Case No.: 19-cv-60541 (S.D. Fla., Bloom, J., Mar. 5, 2019).

Such a recognition applies to the instant case, where defendants may transfer their assets and prevent Plaintiff from meaningful recovery. Indeed, Plaintiff's investigation indicates that Defendants can easily transfer and conceal the funds sought to be restrained, and thereby thwart the Court's ability to grant meaningful relief and eviscerate the status quo. *See* Ex. 3, Decl. of Palmer, at ¶ 16.

In conclusion, Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' infringing activities, and that, unless Defendants' assets are restrained, Defendants will likely transfer or conceal their ill-gotten profit to offshore bank accounts. Accordingly, entry of an order freezing funds in each of Defendants' financial accounts associated with Defendants' Seller Aliases is necessary and appropriate.

### A Bond Should Secure the Injunctive Relief

Federal Rule of Civil Procedure 65(c) provides:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. Fed.R.Civ.P. 65(c).

Pursuant to Fed. R. Civ. P. 65(c) and this Circuit's case law, the amount of the bond is left to the discretion of this Court. *Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1127 (11th Cir. 1997) (the amount of an injunction bond is within the sound discretion of

the Court); *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted) ("Rule 65(c) invests the district court with discretion as to the amount of security required, if any."). In fact, this Circuit has held that no bond is required at all. *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. Unit B 1981) ("Under this court's interpretation of Rule 65(c), the amount of security required by the rule is a matter within the discretion of the trial court. Thus, the court 'may elect to require no security at all.'.").

Plaintiff respectfully submits that the strong and unequivocal nature of its evidence of intentional trademark infringement presented to this Court demonstrates that the risk of compensable harm to Defendants from imposition of an asset restraining order as that sought here is minimal. Given the limited number of Defendants in this case, Plaintiff therefore requests that the Court require a bond of no more than ten thousand U.S. dollars ($10,000).

## Conclusion

Defendants' unlawful activities are irreparably harming Plaintiff's business, Plaintiff's interest in its federally registered trademark and the consumers. Without entry of the requested relief, Defendants' acts of willful trademark infringement will continue to harm Plaintiff and consumers. Therefore, for the foregoing reasons and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter, under seal, a Temporary Restraining.

DATED: June 30, 2025.              Respectfully submitted,

/s/ Andrew J. Palmer
Andrew J. Palmer
Palmer Law Group, P.A.
401 E Las Olas Blvd, Suite 1400
Fort Lauderdale, FL 33308
Phone: 954-771-7050
ajpalmer@palmerlawgroup.com
***Attorney for Plaintiff***