UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-22251-BLOOM

Enlai Zhu,

                *Plaintiff*,

v.

The Partnerships, Unincorporated Associations Identified on Schedule A,

                *Defendants*.              /

_____

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, respectfully submits its Reply to Defendants' Response in Opposition to Plaintiff's Motion for Preliminary Injunction [DE 36], and states as follows:

**Introduction**

***First***, Defendants rely on an unrelated Chinese registration for "Shangguan SINGLELADY." Under the territoriality doctrine, foreign trademark rights are irrelevant to U.S. registration. ***Second***, Defendants claim unbroken use of the composite "Shangguan SINGLELADY" mark since January 2016, yet their own declarations contain no support—much less evidence—of any U.S. domestic sale before Plaintiff's first use the registered SHANGGUAN mark in October 2016. ***Third***, Defendants accuse Plaintiff of fraudulently obtaining the SHANGGUAN registration without supplying any proof – an allegation rests purely on their conjecture, not facts.

Nor have Defendants met their burden to modify the current asset freeze. The lone exhibits they submit lack complete, verified accounting of *all* infringing sales and conceal the breadth of their coordinated, multi-store operation. Without a verified accounting, the restraint should stand.

1

**Argument**

A. **Defendants offered no credible evidence or argument undermining the validity of the SHANGGUAN mark**

1. <u>The Chinese trademark registration of "Shangguan SINGLELADY" is irrelevant to the validity of Plaintiff's SHANGGUAN mark under the territoriality doctrine</u>

"The territoriality doctrine states that a trademark has a separate existence in each sovereign territory in which it is registered or legally recognized as a mark." *Int'l Cosms. Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1248 n.3 (11th Cir. 2002). "The concept of territoriality is basic to trademark law; trademark rights exist in each country solely according to that country's statutory scheme." *Meenaxi Enter., Inc. v. Coca-Cola Co.*, 38 F.4th 1067, 1069 (Fed. Cir. 2022) (quoted authority omitted); *see also Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, The Ecumenical Ord.*, 809 F.3d 1171, 1186 (11th Cir. 2015) ("And, with respect to foreign groups using the Sovereign Order's marks in other countries, their use is irrelevant to the strength of the marks in the United States."); *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.*, 756 F.2d 1525, 1531 (11th Cir. 1985) ("Our concern must be the business and goodwill attached to United States trademarks, not French trademark rights under French law." (internal quotation marks and quoted authority omitted)); *Maltina Corp. v. Cawy Bottling Co.*, 462 F.2d 1021, 1026 (5th Cir. 1972) ("We also accept the proposition ... that trademarks registered in this country are generally deemed to have a local identity-and situs-apart from the foreign manufacturer." (internal quotation marks and quoted authority omitted)).

Therefore, Defendants' untranslated and uncertified documents purporting to show a Chinese registration for a "Shangguan SINGLELADY" mark [DE 36-1, p.22] — even if accepted at face value—are irrelevant and cannot diminish the validity, strength, or enforceability of Plaintiff's SHANGGUAN mark in the United States.

2. <u>Defendants' claim of prior use in January 2016 of the "Shangguan SINGLELADY" in the U.S. is misleading and unsupported</u>

Defendants assert—without citation to any competent evidence—that their supplier has used the "Shangguan SINGLELADY" mark in the United States "since as early as January 2016." *See* Defs.' Opp'n [DE 36, p 6] (citing ¶ 5 of the Li and Liao declarations). However, the declarations do not support Defendants' assertion.

***First***, neither the paragraphs cited by Defendants, nor any other part of the Li or Liao declarations, asserts that the "Shangguan SINGLELADY" mark was used in the United States in January 2016. *See* Decl. of Li, ¶ 5, DE 36-1; Dec. of Liao, ¶ 5, DE 36-2. The declarations merely state, in general terms, that the supplier used the mark before June 6, 2023. *Id*.

***Second***, the two declarations attach Exhibit Ds, which are untranslated, uncertified "sales records." *Id*. While untranslated foreign-language documents carry no evidentiary weight, even if the Exhibit Ds were to be considered, nothing in the Exhibit Ds indicates any prior use in January 2016 of the "Shangguan SINGLELADY" in the United States. *Id*.

Because Defendants have produced no evidence of actual U.S. use prior the Plaintiff's first use of the SHANGGUAN trademark in the United States, their prior-use defense is factually baseless and legally insufficient.

3. <u>Defendants' allegations of fraud in the procurement of SHANGGUAN mark are baseless</u>

While providing no evidence of prior use of "Shangguan SINGLELADY" in January 2016, Defendants assert, without any further evidence, that Plaintiff's October 2016 first-use claim was "presumed fraudulent." [DE 36, p. 7]. This accusation is both illogical and legally deficient.

"A party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof." *Id*. (citing W.D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co., 377 F.2d 1001, 54 C.C.P.A. 1442, 153 USPQ 749, 750 (CCPA 1967).

3

Indeed, "the very nature of the charge of fraud requires that it be proven 'to the hilt' with ***clear and convincing evidence***. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *Id*. (quoting *Smith Int'l, Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (Trademark Trial & App. Bd. 1981)); *see also Island IP Acquisitions, LLC v. Antle*, 2023 U.S. Dist. LEXIS 200577, *9 (S.D.Fla. Nov. 8, 2023) ("The party trying to cancel the registration must prove by ***clear and convincing evidence*** that the applicant knowingly made a false representation of fact to the USPTO, with an intent to deceive, about a material matter.").

In the present case, Defendants offered no evidence at all, let alone "clear and convincing," that Plaintiff knowingly misrepresented any fact to the USPTO or intended to deceive the Office.

Moreover, Defendants' own counsel, Yue "Frank" Niu, [*see* DE 28-1], was recently disciplined by the USPTO for mishandling trademark applications and violating the USPTO Rules of Professional Conduct. *See* USPOT Disciplinary Final Order [D2023-32, Nov. 3, 2024]: https://foiadocuments.uspto.gov/oed/; and https://foiadocuments.uspto.gov/oed/Niu-Final-Order-(D2023-32)-Redacted.pdf.

Defendants' attempt to project their counsel's misconduct onto Plaintiff's—without any supporting proof—only underscores the frivolous nature of their fraud claim.

**B. Defendants' uncontested infringement activities, and their fragmentary disclosure fail to justify modifying the current asset restrain**

1. <u>The use of SHANGUAN mark is undisputed, the likelihood of confusion is unquestioned</u>

"A movant need only demonstrate a substantial likelihood of success on one of its claims to obtain a preliminary injunction." *Chanel, Inc. v. Individuals*, No. 25-cv-21771-WILLIAMS/GOODMAN, 2025 U.S. Dist. LEXIS 86184, at *9 n.6 (S.D. Fla. May 6, 2025) (quoting *White Cap., L.P. v. Heyden Enters., LLC*, No. 23-14248-CIV, 2024 U.S. Dist. LEXIS

127628, 2024 WL 3738925, at *3 (S.D. Fla. July 19, 2024), report and recommendation adopted, No. 23-14248-CIV, 2024 U.S. Dist. LEXIS 147909, 2024 WL 3861528 (S.D. Fla. Aug. 19, 2024); *Sapphire Consulting Servs. LLC v. Anderson*, 2021 WL 1053276, at *3 (M.D. Fla. Feb. 12, 2021) ("When a plaintiff asserts multiple claims as a basis for a preliminary injunction, the plaintiff 'need only establish a substantial likelihood of success on one claim.'" (citation omitted)).

Here, Defendants do not deny that they used the SHANGGUAN mark—at least in part—as a source identifier, and their own submission confirm that they sold goods in the United States bearing the SHANGGUAN mark. Because the mark they used is identical to Plaintiff's federally registered mark and the goods are identical (towels), consumer confusion can be presumed. Accordingly, there is no genuine dispute that Defendants' conduct constitutes trademark infringement, and the "substantial likelihood of success" prong is clearly satisfied.

2. <u>Defendants have not met their burden to justify any modification of the asset restraint</u>

A movant under asset restraint bears the "burden to establish that a modification of the Asset Freeze is warranted." *See SEC v. Complete Bus. Sols. Grp., Inc.*, No. 20-CIV-81205-RAR, 2023 U.S. Dist. LEXIS 242104, at *9 (S.D. Fla. Dec. 5, 2023); *see also Roadget Bus. Pte. Ltd. v. Schedule A Hereto*, No. 24 C 607, Doc. 77 (N.D. Ill. Apr. 16, 2024) (granting motion to modify asset restraint when defendants provided data obtained from online sales platform with accompanying affidavit from employee at online sales platform explaining how the platform collected the data).

Further, Plaintiff is entitled to a full accounting of all profits derived from the sale of infringing products across all Walmart stores operated by Defendants. See WMS Gaming Inc. v. WPC Productions Ltd., 542 F.3d 601, 607-609 (7th Cir. 2008) (citing *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251 (1916); *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942)).

Here, Defendants' limited disclosures before this Court [*see* DE 36-1, 36-2] is inadequate to justify lifting or narrowing the current asset restraint.

Defendants' submission consists solely of two exhibits—screenshots attached to the Li and Liao declarations—unsupported by any certification or explanation from Walmart regarding how the data were generated, or the relevant time period.

The exhibits supply no ledger reconciling gross revenues with refunds, chargebacks, platform fees, or inter-account transfers, and they offer no statement or full accounting of the balances currently frozen. In short, Defendants have offered nothing resembling the "complete, verified accounting of all infringing sales and of the restrained assets" that courts usually require before considering any modification of an asset freeze. This fragmentary, self-selected data prevent make it impossible to determine either the full scope of Defendants infringing activity or the amount of tainted proceeds. Consequently, Defendants have not carried their burden, and the freeze order should remain in place.

It is clear that multiple Walmart storefronts are under common ownership and control. Even accepting the screenshots at face value, they depict, at most, at best, a snapshot of a far broader, coordinated multi-store operation, thereby masking the true scale of their enterprise.

Absent a complete, verified accounting of <u>*all*</u> infringing sales and of the restrained assets, Defendants have not met their burden, and the Court should decline to disturb the existing asset restraint order.

### **Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the Motion for Preliminary Injunction to halt Defendants' infringing activities and preserve Plaintiff's rights pending a full resolution of this case.

Because Plaintiff is overwhelmingly likely to succeed on the merits, faces irreparable harm, and the balance of equities and public interest favor protection of legitimate marks, conversion of the TRO to a preliminary injunction is both necessary and proper.

August 1, 2025                                    Respectfully submitted,

/s/ Andrew J. Palmer
Andrew J. Palmer
Palmer Law Group, P.A.
401 E Las Olas Blvd, Suite 1400
Fort Lauderdale, FL 33308
Phone: 954-771-7050
ajpalmer@palmerlawgroup.com
***Attorney for Plaintiff***